# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

SHERI BUTLER BROCKINGTON, )
on behalf of herself and others similarly )     **Case No. 3:26-cv-00249-KAC-DCP**
situated, )
    )
          **Plaintiff,** )
vs. )     **District Judge Katherine A. Crytzer**
    )
**COUNTRYSIDE RENTALS, INC.,** )     **Magistrate Judge Debra C. Poplin**
    )
          **Defendant.** )

## DEFENDANT COUNTRYSIDE RENTALS, INC.'S
## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## I.     INTRODUCTION

Plaintiff Sheri Butler Brockington cannot meet her burden of proving that personal jurisdiction exists against Defendant Countryside in this case. Ms. Brockington brings one class-action claim under the Telephone Consumer Protection Act for texting her telephone number, which is listed on the national do-not-call registry. Doc. 1 at ¶¶ 15, 19, 20. The Complaint is almost entirely devoid of jurisdictional facts, but it does plead that Countryside "sent calls into this District." *Id.* at ¶ 8. However, Countryside has no connection to Tennessee related to Ms. Brockinton's claim other than her alleged presence in Tennessee. Tissot Aff., ¶¶ 3–35. This "unilateral activity" of Ms. Brockington is insufficient as a matter of law to establish personal jurisdiction against Countryside. *Alix Partners, LLP v. Brewington*, 836 F.3d 543, 550 (6th Cir. 2016).

Countryside's state of incorporation and principal place of business is in Ohio. Tissot Aff. at ¶¶ 3, 4. Countryside is not registered to do business in Tennessee. *Id.* at ¶ 14. It does not own or lease any real property in Tennessee. *Id.* at ¶¶ 6, 13. It has no physical locations, offices,

1

or personnel in Tennessee. *Id.* at ¶ 12. It does not deliver or provide any products or services to Tennessee. *Id.* at ¶¶ 11, 15, 16. It does no advertising or marketing targeted towards Tennessee. *Id.* at ¶¶ 18, 24. It has never paid Tennessee business or franchise taxes. *Id.* at ¶ 21. It has never employed anyone who worked from Tennessee. *Id.* at ¶ 22. It has never maintained inventory in Tennessee. *Id.* at ¶ 23. And Countryside's closest location to Tennessee is over 100 miles and an approximately two-hour drive away. *Id.* at ¶ 25.

The only reason why Countryside contacted Ms. Brockington in the first place is because the number at issue, which Ms. Brockington allegedly first obtained in December 2023, Doc. 1 at ¶ 14, used to belong to someone named "Brittney" who contacted Countryside in 2022, Tissot Aff. at ¶ 30. This person provided her telephone number, consented for Countryside to contact her, and represented that her local Countryside store was in Athens, Ohio. Tissot Aff. at ¶¶ 30–34. As a result, when Countryside texted the telephone number at issue in this case, it did not know that the person on the other end had a connection to Tennessee, so the requirements of purposeful availment are not satisfied. *Id.* at ¶ 35; *see Walden v. Fiore*, 571 U.S. 277, 284–86 (2013). And Countryside has no other connection to Tennessee related to Ms. Brockington's claim. Tissot Aff. at ¶¶ 3–40.

The facts of this case are not enough to establish personal jurisdiction against Countryside under the constitutional requirements of due process, and Ms. Brockington cannot meet her burden of proving otherwise. *See Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (stating that the plaintiff bears the burden of establishing personal jurisdiction). Ms. Brockington's claim against Countryside should be dismissed as a result.

## II.    BACKGROUND FACTS

### A.    Jurisdictional Facts Alleged in the Complaint

The Complaint brings one claim for violation of the Telephone Consumer Protection Act under 47 U.S.C. § 227 ("TCPA"). Doc. 1 at ¶¶ 44–48. Specifically, Ms. Brockington pleads that Countryside made "telemarketing calls . . . to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry." Doc. 1 at ¶ 45; *see also Chapman v. Nat'l Health Plans & Benefits Agency LLC*, 619 F. Supp. 3d 788, 797 (E.D. Mich. 2022) (stating that a claim under 47 U.S.C. § 227(c) may be based on telephone solicitations to a number on the National Do Not Call Registry).

Going to personal jurisdiction, the Complaint alleges that Countryside "is a corporation," and that it "sent calls into this District." Doc. 1 at ¶¶ 6, 8. No other alleged facts go to personal jurisdiction over Countryside.[1] The result is that the Complaint's allegations are insufficient as a matter of law to meet Ms. Brockington's burden of establishing personal jurisdiction against Countryside. *See Intera Corp.*, 428 F.3d at 615 (stating that the plaintiff bears the burden).

### B.    Additional Facts Relevant to Jurisdiction

Countryside submits the attached affidavit of Michael D. Tissot, the Owner and President of Countryside to fill out the missing facts. Affidavit of Michael D. Tissot ("Tissot Aff.") at ¶ 2, attached hereto as Exhibit A. This Court has discretion to resolve the present Motion "based on affidavits alone." *Intera Corp.*, 428 F.3d at 614 n.7; *accord Reeves v. 1st Class Real Estate, LLC*, No. 1:22-cv-01097-STA-JAY, 2022 U.S. Dist. LEXIS 152060, at *3 (W.D. Tenn. Aug. 24, 2022); *see also Hammons v. Lasik Vision Inst., LLC.*, No. 04-2243-B, 2006 U.S. Dist. LEXIS

---

[1] The Complaint's allegation that "the telephone calls at issue were organized from this District" is conclusory, unsupported, and inherently implausible given that Countryside is located in Ohio and has no connection with Tennessee. Tissot Aff. at ¶¶ 4, 6, 12, 16, 17, 19.

3

63921, at *3 (W.D. Tenn. Sept. 14, 2012) (stating that filing materials outside the pleadings in support of a motion to dismiss for lack of personal jurisdiction does not convert the motion into one for summary judgment).

Countryside's longtime Owner and President states under oath that Countryside is incorporated in the State of Ohio, and its principal place of business is in Bainbridge, Ohio. Tissot Aff at ¶¶ 3, 4. Countryside does business under the name Rent-2-Own, operating 43 retail stores in Ohio and Kentucky with approximately 496 employees. *Id.* at ¶¶ 5–7. Its main line of business is renting home furnishings, but also some appliances, electronics, computers, and tires, all from its retail stores. *Id.* at ¶ 8. Given the nature of this business, Countryside relies on foot traffic, and its customers typically reside within 30 minutes of a retail store. *Id.* at ¶ 9. Countryside also tries to find customers through its website, but all online sales must be finalized in person at a retail store, over the phone, or at a customer's house. *Id.* at ¶ 10. And Countryside only delivers to customers within a 30-minute drive from a retail store. *Id.* at ¶¶ 10, 11. This means that Countryside will not deliver beyond Ohio, Kentucky, and limited parts of West Virginia that are near the Ohio and Kentucky borders. *Id.* at ¶ 11.

As to connections with Tennessee, there are none. Countryside has no physical locations, offices, or personnel in Tennessee. Tissot Aff. at ¶ 12. It does not own or lease any property in Tennessee. *Id.* at ¶ 13. It is not registered to do business in Tennessee. *Id.* at ¶ 14. It does not provide services or products to anyone located in Tennessee. *Id.* at ¶ 15. It does not deliver any products or services to Tennessee. *Id.* at ¶ 17. It does no advertising or marketing targeted towards Tennessee. *Id.* at ¶ 18. It has never had a registered agent for service of process in Tennessee. *Id.* at ¶ 19. It has never maintained a bank account in Tennessee. *Id.* at ¶ 20. It has never paid Tennessee business or franchise taxes. *Id.* at ¶ 21. It has never employed anyone who

4

works from Tennessee. *Id.* at ¶ 22. And it has never maintained inventory in Tennessee. *Id.* at ¶ 24. Countryside does have a few vendors with offices in Tennessee, but it otherwise does not transact any business in Tennessee or with anyone located in Tennessee. *Id.* at ¶ 17. Similarly, Countryside advertises on its internet website, but nothing on its website is specifically focused toward Tennessee or Tennessee residents. *Id.* at ¶ 24. Nor would Countryside profit from doing so given that its closest location to Tennessee is in Mt. Sterling, Kentucky, which is over 100 miles and an approximately two-hour drive away from the Tennessee border, and that store just opened recently in May 2026. *Id.* at ¶ 26. Countryside has no connection with Tennessee outside of the allegation that it "sent calls into this District" to Ms. Brockington. Doc. 1 ¶ at 8.

Related specifically to Ms. Brockington's TCPA claim, Countryside does not use an auto-dialer. Tissot Aff. at ¶ 26. The Complaint's assertion that Countryside "makes calls *en masse*" is conclusory, unsupported, and false. Doc. 1 at ¶¶ 4, 30. Instead, Countryside does not intend to send unsolicited messages. Tissot Aff. at ¶ 27. Countryside only intends to contact people who have contacted Countryside first. *Id.* Countryside only intends to send telephone messages to existing or potential customers who have reached out for information, provided their telephone number, and consented to being contacted. *Id.* at ¶¶ 28, 29.

That is what happened with the telephone number at issue in the present case. Tissot Aff. at ¶ 30. Countryside only texted that number because it believed it belonged to someone named "Brittney" who contacted Countryside in 2022. *Id.* Brittney selected the Athens, Ohio, store as her local store, and she gave no indication that she had any connection to Tennessee, or any other state. *Id.* at ¶¶ 1, 32. When Countryside texted the number, it did not believe that it was on a do-not-call registry. *Id.* at ¶ 33. Instead, Countryside believed that it was texting a number provided by the customer directly, so there was no reason to suspect that someone would willingly submit

5

a telephone number to be contacted if it was listed on a do-not-call registry. *Id.* at ¶ 34.

When Countryside texted the number at issue, it was relying on the owner's consent allowing Countryside to contact her. Tissot Aff. at ¶ 34. Countryside did not know that it was reaching out to someone with a connection to Tennessee. *Id.* at ¶ 35. Countryside instead believed that it was contacting someone in Ohio who resided in Ohio, and specifically the person named Brittney who reached out to Countryside as a potential customer in 2022. *Id.* at ¶ 36. Countryside therefore had no intent to send an unsolicited message. *Id.* at ¶ 37. It only believed that it was contacting a potential customer who previously reached out to Countryside. *Id.*

Ms. Brockington's Complaint details two of the three text messages that Countryside sent to the telephone number at issue. Doc. 1 at ¶ 20. But it fails to mention that Countryside only sent three text messages in total to that number, and one of those three was after the person on the other end asked where Countryside was located. Tissot Aff. at ¶ 38. Countryside responded with the address of its store in Athens, Ohio. *Id.* at ¶ 39. Ms. Brockington therefore knew that Countryside was located in Ohio when she initiated this case. *Id.* But her Complaint still fails to allege sufficient facts to establish personal jurisdiction beyond that Countryside "is a corporation" and it "sent calls into this District." Doc. 1 at ¶¶ 6, 8.

Overall, Countryside had no intent to disturb or intrude on Ms. Brockington's privacy. *Id.* at ¶ 40. Countryside believed that it was contacting a potential customer who gave her telephone number to Countryside, consented to allowing Countryside to contact her, and who represented that the Countryside store in Athens, Ohio, was her local store. *Id.* at ¶¶ 30–34. Most critically, when Countryside texted the telephone number at issue in this case, it did not know that it was reaching out to someone with a connection to Tennessee. *Id.* at ¶ 35.

Given all these facts, Ms. Brockington cannot meet her burden of establishing personal

jurisdiction against Countryside. As a result, the Court should grant Countryside's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2), and the Complaint should be dismissed.

## III. ARGUMENT

Countryside moves to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). "The plaintiff bears the burden of making a prima facie showing of the court's personal jurisdiction over the defendant." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). "This means that the plaintiff must set forth specific facts to support a finding of jurisdiction by a preponderance of the evidence." *Reeves v. 1st Class Real Estate, LLC*, No. 1:22-cv-01097-STA-JAY, 2022 U.S. Dist. LEXIS 152060, at *3–4 (W.D. Tenn. Aug. 24, 2022) (*citing Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012)); *accord Noval Int'l Research, LLC v. Andec, Inc.*, 875 F. Supp. 2d 804, 807 (W.D. Tenn. 2012).

"Depending on the type of minimum contacts in a case, personal jurisdiction can either be specific or general." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549–50 (6th Cir. 2007) (*citing Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir. 1994)). Ms. Brockington cannot establish either general or specific personal jurisdiction.[2]

> **A. General jurisdiction is lacking because Countryside does not have "continuous and systematic" contacts with Tennessee, and it is not "essentially at home" in Tennessee.**

The binding precedent applied to the facts proves that Ms. Brockington cannot meet her

---

[2] Countryside also questions whether Plaintiff filed this case in the correct Division of this Court under E.D. Tenn. L.R. 3.1.2. Plaintiff filed in the Northern Division (at Knoxville). But she lists her county of residence as "Hamilton," Doc. 1-1 at 1, which is within the Southern Division (at Chattanooga), E.D. Tenn. L.R. 3.1.2(a)(3). Plaintiff's telephone number within the 423 area code also corresponds with Hamilton County. *See* Doc. 1 at ¶¶ 14, 15. As such, the present Division is not where "a defendant resides," "a plaintiff resides," or "a substantial part of the events or omissions giving rise to the claim occurred." E.D. Tenn. L.R. 3.1.2(b). This Court therefore should have "sole discretion" to transfer this case to Chattanooga. *Id.* at 3.1.2(c).

burden of establishing general personal jurisdiction against Countryside. *See Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (stating that the plaintiff bears the burden of establishing personal jurisdiction); *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 502 (6th Cir. 2020) (stating that the plaintiff bears the burden of establishing at least a prima facie showing of general personal jurisdiction based on the allegations of the complaint). Because Countryside is incorporated in and has its principal place of business in Ohio, and because Countryside does not have "continuous and systematic" contacts with and is not "essentially at home" in Tennessee, general personal jurisdiction is lacking in this case. *Ross v. Robinson, Hoover & Fudge, PLLC*, 173 F.4th 745, 752 (6th Cir. 2026) (*quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).[3]

"General jurisdiction exists when a defendant's 'contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Intera Corp.*, 428 F.3d at 615 (*quoting Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002)). In other words, a defendant must be "'essentially at home'" in the state such that "jurisdiction extends to any and all claims brought against a defendant." *Tenn. ex rel. Skrmetti v. Ideal Horizon Bens., LLC*, No. 3:23-CV-00046-DCLC-JEM, 2024 U.S. Dist. LEXIS 178956, at *10 (E.D. Tenn. Sept. 30, 2024) (*quoting Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. 351, 358 (2021)); *accord Noval Int'l Research, LLC*, 875 F. Supp. 2d at 815.

As stated above, Countryside is incorporated in the state of Ohio. Tissot Aff. at ¶ 3. Countryside's principal place of business is in Ohio. *Id.* at ¶ 4. And Countryside is not registered

---

[3] Countryside does not expect Ms. Brockington to contest general jurisdiction because there is no basis on which to do so. But as the movant, Countryside addresses the issue nonetheless.

to do business in Tennessee. *Id.* at ¶ 14; *see Moore v. Med. Mgmt. Int'l, Inc.*, No. 2:23-CV-152-KAC-CRW, 2025 U.S. Dist. LEXIS 49128, at *5–6 (E.D. Tenn. Mar. 18, 2025) (finding general jurisdiction lacking because Tennessee was not the defendant's "state of incorporation nor principal place of business or headquarters").

In addition, Countryside maintains no real property in Tennessee—its only locations are in Ohio and Kentucky. Tissot Aff. at ¶ 6. Countryside has no physical locations, offices, or personnel in Tennessee. *Id.* at ¶ 12. Countryside does not own or lease any property in Tennessee. *Id.* at ¶ 13. Countryside does not deliver or provide any products or services to Tennessee. *Id.* at ¶¶ 11, 15, 16. Countryside does no advertising or marketing targeted towards Tennessee. *Id.* at ¶¶ 18, 24. Countryside has never paid Tennessee business or franchise taxes. *Id.* at ¶ 21. Countryside has never employed anyone who worked from Tennessee. *Id.* at ¶ 22. Countryside has never maintained inventory in Tennessee. *Id.* at ¶ 23. Countryside's closest location to Tennessee is over 100 miles and an approximately two-hour drive away from Tennessee. *Id.* at ¶ 25. Other than having a few vendors with offices in Tennessee, Countryside does not transact any business in Tennessee or with anyone located in Tennessee. *Id.* at ¶ 17. And merely conducting some business in a state is not enough to establish general personal jurisdiction. *See Noval Int'l Research, LLC*, 875 F. Supp. 2d at 816 (holding that evidence of such contacts "does not establish the kind of continuous and systematic contacts with the forum required to establish general personal jurisdiction"). In sum, this is not an "exceptional case" where general jurisdiction exists for a corporation outside of its place of incorporation or principal place of business. *Branstetter v. Holland Am. Line N.V.*, 430 F. Supp. 3d 364, 371 (W.D. Tenn. 2019) (*quoting Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014)).

Based on these facts and the binding precedent, Ms. Brockington cannot establish general

9

jurisdiction over Countryside, because Countryside does not have "continuous and systematic" contacts with Tennessee and it is not "essentially at home" in Tennessee. *Ross*, 173 F.4th at 752 (*quoting Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919). Countryside's Motion to Dismiss should be granted accordingly.

> **B.      Specific jurisdiction over Countryside is lacking based on the facts and the three required elements of constitutional due process.**

The binding precedent applied to the facts also proves that Ms. Brockington cannot meet her burden of establishing specific personal jurisdiction against Countryside under the requirements of constitutional due process. As established below, purposeful availment is lacking because Countryside did not purposefully or deliberately act within Tennessee. Tissot Aff. at ¶ 35. The Complaint does not allege sufficient facts to establish that Ms. Brockington's TCPA claim arises from or relates to any contacts with Tennessee. Doc. 1 at ¶¶ 6, 8. And exercising specific personal jurisdiction against Countryside would not be constitutionally reasonable given the facts of this case. Because Countryside did not know that it was reaching out to someone with a connection to Tennessee when it texted the telephone number at issue in this case—it only believed that it was contacting a potential customer who previously consented to such contact and provided Countryside with that telephone number—the constitutional requirements of due process are not satisfied. Tissot Aff. at ¶¶ 34–36.

Plaintiff's sole claim under the TCPA gives this Court subject-matter jurisdiction based on federal question. Doc. 1 at ¶ 7. "When a federal court has federal question jurisdiction, such as in this case, personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." *Cunningham v. Sunshine Consulting*

*Grp., LLC*, NO. 3:16-2921, 2018 U.S. Dist. LEXIS 121709, at *8 (M.D. Tenn. July 20, 2018), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 234809, at *1 (M.D. Tenn. Aug. 7, 2018), (*citing Cmty. Trust Bancorp, Inc. v. Cmty. Trust Fin. Corp.*, 692 F.3d 469, 471 (6th Cir. 2012)). "Tennessee's long-arm statute has been interpreted to extend to the limits on personal jurisdiction imposed by the Due Process Clause." *Sunshine Consulting Grp.*, 2018 U.S. Dist. LEXIS 121709, at *8 (*citing Payne v. Motorists' Mut. Ins. Cos.*, 4 F.3d 452, 455 (6th Cir. 1993); *accord Johnson v. Griffin*, 85 F.4th 429, 432 (6th Cir. 2023). "Therefore, the two issues merge, and the Court need only determine whether the assertion of personal jurisdiction violates constitutional due process." *Sunshine Consulting Grp.*, 2018 U.S. Dist. LEXIS 121709, at *8–9 (*citing Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003); *accord Skrmetti*, 2024 U.S. Dist. LEXIS 178956, at *10; *Riley v. Phoenix Cmty. Capital*, No. 3:25-cv-00036, 2026 U.S Dist. LEXIS 60726, at *12 (M.D. Tenn. Mar. 23, 2026); *Baskin v. Pierce & Allred Constr., Inc.*, 676 S.W.3d 554, 567 (Tenn. 2022).

"An exercise of specific jurisdiction is proper where the claims in the case arise from or are related to the defendant's contacts with the forum state." *Intera Corp.*, 428 F.3d at 615 (*citing Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997)). The applicable three-prong test for constitutional due process from *Southern Machine Co. v. Mohasco Industries, Inc.* requires, (1) "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state," (2) "the cause of action must arise from the defendant's activities there," and (3) "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Intera Corp.*, 428 F.3d at 615 (*quoting S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). All

11

three prongs of this test must be satisfied. *Skrmetti*, 2024 U.S. Dist. LEXIS 178956, at *12 (*citing LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1303 (6th Cir. 1989)).

### 1. Countryside did not purposefully avail itself of acting within Tennessee because it did not know that it was contacting someone with a connection to Tennessee.

As with general jurisdiction, the binding precedent applied to the facts do not establish purposeful availment against Countryside. Instead of purposefully and deliberately acting within Tennessee, as the binding precedent requires, *Intera Corp.*, 428 F.3d at 616, 617, the "unilateral activity" of Ms. Brockington is the only connection to Tennessee in this case, *Alix Partners, LLP v. Brewington*, 836 F.3d 543, 550 (6th Cir. 2016). And there are no "contacts that the 'defendant *himself*' create[ed] with the forum State," *Walden v. Fiore*, 571 U.S. 277, 284 (2013), because "[w]hen Countryside texted the telephone number at issue it did not know that it was reaching out to someone with a connection to Tennessee," Tissot Aff. at ¶ 35. As a result, Ms. Brockinton cannot meet her burden of establishing specific jurisdiction against Countryside, and Countryside's motion should be granted.

The first prong of the due-process test, purposeful availment, "is an 'essential' prerequisite" for specific jurisdiction. *Reeves v. 1st Class Real Estate, LLC*, No. 1:22-cv-01097-STA-JAY, 2022 U.S. Dist. LEXIS 152060, at *6–7 (W.D. Tenn. Aug. 24, 2022) (*quoting Means v. U.S. Conf. of Catholic Bishops*, 836 F.3d 643, 649 (6th Cir. 2016)). "[T]he emphasis in the purposeful availment inquiry is whether the defendant has engaged in some overt actions connecting the defendant with the forum state." *Beydoun v. Wataniya Rest. Holding, Q.S.C.*, 768 F.3d 499, 506 (6th Cir. 2014) (*citing Fortis Corporate Ins. v. Viken Ship Mgmt.*, 450 F.3d 214, 218 (6th Cir. 2006)).

Here, the only overt action alleged in the Complaint is that Countryside "sent calls into

12

this District." Doc. 1 at ¶ 8. That is Countryside's only connection to Tennessee that arises from or is related to Ms. Brockington's TCPA claim. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (explaining that specific personal jurisdiction requires the plaintiff's claim to arise out of or relate to the defendant's forum contacts). In some cases this could be enough because "purposeful availment may exist when a defendant makes telephone calls and sends facsimiles into the forum state and such communications 'form the bases for the action.'" *Intera Corp.*, 428 F.3d at 616 (*quoting Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001)). But these actions still must be "purposeful," and a defendant must act "deliberately" to affiliate itself with Tennessee. *Id.* at 616, 617.

Here, Countryside's business is based on retail stores, and it relies on foot traffic at its locations in Ohio and Kentucky. Tissot Aff. at ¶¶ 6, 9. It is possible for a potential customer to contact Countryside online, but any such sale must be finalized in person at a store, over the phone, or at the customer's home, and Countryside has service area limits that do not exceed a 30-minute drive from a retail store. *Id.* at ¶ 10. Countryside does not deliver its products beyond this 30-minute service area. *Id.* at ¶ 11. As a result, Countryside's potential base of customers is geographically limited, so it never intends to send unsolicited telephone messages or to target any advertising or marketing towards Tennessee. *Id.* at ¶¶ 18, 27. That would be a complete waste given Countryside's business of renting home furnishings. *See id.* at ¶¶ 8, 9.

For the specific texts at issue, Countryside was first contacted by someone named Brittney in 2022 to inquire about becoming a customer. Tissot Aff. at ¶ 30. This person selected the Athens, Ohio, store as her local store, and she gave no indication that she had any connection to Tennessee, or any other state. *Id.* at ¶¶ 31, 32. When Countryside texted the number at issue in this case, it believed that it was contacting this person named Brittney, and Countryside was

13

relying on the fact that she specifically consented to allow Countryside to contact her. *Id.* at ¶¶ 30, 34. Countryside's only intent in texting was to contact Brittney, who it believed was located in Ohio, not to contact some other person in Tennessee. *Id.* at ¶¶ 35, 36. Countryside had no idea that it was contacting someone with a connection to Tennessee. *Id.* at ¶ 35. And Countryside does not send unsolicited messages in general—it only intends to contact existing or potential customers that have contacted Countryside first and consented to receive messages. *Id.* at ¶¶ 27–29. There was therefore no "purposeful" availment by Countryside or an attempt by Countryside to "deliberately" affiliate itself with Tennessee. *Intera Corp.*, 428 F.3d at 616, 617 (*quoting Neal*, 270 F.3d at 332). The caselaw makes this clear.

A finding of purposeful availment cannot be based on "random, fortuitous, or attenuated contacts . . . or of the unilateral activity of another party or a third person." *Alix Partners, LLP v. Brewington*, 836 F.3d 543, 550 (6th Cir. 2016) (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). That is what occurred here. The "unilateral activity" of Ms. Brockington is the only connection to Tennessee in this case given that Countryside reasonably believed it was contacting a person in Ohio who consented for Countryside to contact her. *Id.*; Tissot Aff. at ¶¶ 30–37. Given Ms. Brockington's assertion that she acquired the telephone number in question "in December of 2023," Doc. 1 at ¶ 14, it is reasonable to conclude that the person who contacted Countryside in 2022 gave up her number thereafter, and it was later acquired by Ms. Brockington, Tissot Aff. at ¶ 31. But this is a "random, fortuitous" event based solely on "the unilateral activity of another party or a third person," not based on the purposeful and deliberate behavior of Countryside to reach out to Tennessee, so it is insufficient to establish purposeful availment as a matter of law. *Alix Partners, LLP*, 836 F.3d at 550; *see also Baskin*, 676 S.W.3d at 570 (also analyzing purposeful availment based on deliberate actions of the defendant, not on

14

random or fortuitous events or "the unilateral activity of the plaintiff").

Purposeful availment similarly requires that "'the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum State . . . and where the defendants conduct and connection with the forum are such that he should reasonably anticipate being haled into court there.'" *Alix Partners, LLP*, 836 F.3d at 550 (*quoting Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002)). Again, Countryside itself did not create any substantial connection with Tennessee because in sending three text messages to the number at issue it only intended to contact someone named Brittney who represented that her local store was in Athens, Ohio. Tissot Aff. at ¶¶ 30, 31, 38. Countryside did not know it was reaching out to someone with a connection to Tennessee. *Id.* at ¶ 35. Nor would it intentionally do so because of its 30-minute-drive service limits. *Id.* at ¶¶ 9–12. Countryside cannot have "reasonably anticipate[d] being haled into court" in Tennessee given that it did not intend to contact someone in Tennessee, and it instead believed that it was contacting a potential customer near a local store Ohio who consented to such contact. *Alix Partners, LLP*, 836 F.3d at 550; Tissot Aff. at ¶¶ 30–35." Given these facts, Countryside does not meet the requirement of "'deliberately reach[ing] out beyond its home.'" *Skrmetti*, 2024 U.S. Dist. LEXIS 178956, at *12 (*quoting Ford Motor Co.*, 592 U.S. at 360).

These facts further establish that Countryside did not deliberately undertake to do or cause something in Tennessee to create obligations between itself and a resident of Tennessee. *See Riley*, 2026 U.S Dist. LEXIS 60726, at *19 (*citing Neogen Corp.*, 282 F.3d at 891). Countryside did not seek to "further their business in Tennessee" or to "conduct business in Tennessee." *Id.* Any contact with Tennessee was "merely by virtue of [the plaintiff] choosing to reside in Tennessee." *Id.* And Countryside was not even aware of that when it contacted the

15

number at issue. Tissot Aff. at ¶¶ 30–35. This is not "purposeful" availment by Countryside.

The U.S. Supreme Court case *Walden v. Fiore*, 571 U.S. 277 (2013), makes this clear where it reaffirmed that the relationship between a defendant and the forum state "must arise out of contacts that the 'defendant *himself*' create[d]." *Id.* at 284 (*quoting Burger King Corp.*, 471 U.S. at 475). Contacts "between the plaintiff (or third parties) and the forum State" are not relevant. *Id.* at 284–85. Countryside did not create a connection with Tennessee given that it did not know it was reaching out to someone with a connection to Tennessee. Tissot Aff. at ¶ 35. And Ms. Brockington's contacts with Tennessee are not relevant. *Walden*, 571 U.S. at 284–85.

The *Walden* Court also reaffirmed that the relevant inquiry is "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." 571 U.S. at 285; *accord Baskin*, 676 S.W.3d at 567 (also stating that the correct inquiry is not on the relationship between the defendant and the plaintiff, "but rather on the defendant's relationship to the forum state itself"). The "random" and "fortuitous" fact that Ms. Brockington may have resided in Tennessee when Countryside contacted her (even though the Complaint does not clearly allege this fact) is not enough to establish that Countryside "purposefully" and "deliberately" reached out to Tennessee. *Walden*, 571 U.S. at 285, 286. Instead, Countryside did not know that it was reaching out to someone with a connection to Tennessee. Tissot Aff. at ¶ 35.

Moreover, the fact that the telephone in question is a mobile cellular phone means that Ms. Brockington could have been located anywhere in the nation when Countryside contacted her, and the Complaint does not allege where the texts were actually received, if it even occurred in Tennessee at all. *See* Doc. 1; *Mucha v. Wagner*, 378 N.C. 167, 168 (2021) (holding that given the decline of landlines and the rise of mobile phones, a person's phone number alone does not provide a reliable indication of their location, so a telephone call to a cell phone does not satisfy

16

the purposeful availment requirement of personal jurisdiction in the state where the phone happens to be located when answered). Because "the plaintiff cannot be the only link between the defendant and the forum," purposeful availment is not satisfied on the present facts. *Walden*, 571 U.S. at 285. And compared to the facts of *Walden*, the facts here are even less supportive of purposeful availment given that the defendant in that case "knew" about the plaintiff's "connections" to the forum state at issue. *Id.* at 289 (further stating that "mere injury to a forum resident is not a sufficient connection to the forum"); *see also Baskin*, 676 S.W.3d at 571 (also finding purposeful availment lacking even though the defendant "knew of the Tennessee connection"). Countryside had no knowledge of any Tennessee connection. Tissot Aff. at ¶ 35.

In sum, the purposeful availment requirement of constitutional due process is not satisfied in this case because Countryside did not <u>purposefully</u> avail itself of acting within Tennessee or create a <u>substantial</u> connection with Tennessee. Instead, the only connection to Tennessee was created unilaterally by Ms. Brockington with no knowledge or intent from Countryside. "Because purposeful availment is a necessary first step to establishing specific personal jurisdiction and because Plaintiff fails to satisfy this step," the Court can end its analysis here and grant dismissal on this basis alone. *Sunshine Consulting Grp.*, 2018 U.S. Dist. LEXIS 121709, at \*11; *accord Noval Int'l Research, LLC*, 875 F. Supp. 2d at 814. The same result is nevertheless reached under the other two prongs of the applicable test.

> **2.    The Complaint does not allege sufficient facts to establish that Ms. Brockington's TCPA claim arises from or relates to any contacts with Tennessee.**

The "arising from" prong of the test "is satisfied 'when the operative facts of the controversy arise from the defendant's contacts with the state.'" *Intera Corp.*, 428 F.3d at 617 (*quoting Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000)). "'Only when the

17

operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contract.'" *Calphalon*, 228 F.3d at 723–24 (*quoting Southern Machine*, 401 F.2d at 384, n.29).

Satisfying this prong of the test *should* be simple for any TCPA claim because such a claim should always arise from calls or texts to the plaintiff. But Ms. Brockington's Complaint does not allege sufficient facts to establish this elementary point.

The "operative facts" of Ms. Brockington's alleged claim are the text messages sent by Countryside. *Intera Corp.*, 428 F.3d at 617; Doc. 1 at ¶ 21. The Complaint pleads that Countryside "sent calls into this District." Doc. 1 at ¶ 8. But this is an unsupported and conclusory assertion because the Complaint never states where Ms. Brockington was located when she received the texts in question. *See id.* She could have been anywhere, even in Ohio, given that the texts were received on a mobile cellular telephone. The Complaint never even states Ms. Brockington's address or where she resides such that a location within Tennessee could be inferred. *See* Doc. 1. And Countryside has no independent knowledge of where Ms. Brockington was located when she received the texts in question, so it cannot include relevant facts in its supporting affidavit, especially when Countryside believed that it was only contacting a potential customer named Brittney who represented that her local store was in Athens, Ohio, not Ms. Brockington or anyone else with a connection to Tennessee. Tissot Aff. at ¶¶ 30–35.

The result is that Ms. Brockington has failed to sufficiently allege that Countryside had any "contacts with the state" related to her TCPA claim. *Calphalon*, 228 F.3d at 723. The arising-from prong of the test is therefore not satisfied, and Countryside's Motion to Dismiss should be granted accordingly.

18

### 3. Exercising specific personal jurisdiction against Countryside would not be constitutionally reasonable given the facts of this case.

The final requirement of constitutional due-process, reasonableness, is also not satisfied in this case. Countryside does not have a "substantial enough connection" with Tennessee based on the facts. *Intera Corp.*, 428 F.3d at 618.

The "reasonable" prong of the test "mandates that 'the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.'" *Intera Corp.*, 428 F.3d at 618 (*quoting Youn v. Track, Inc.*, 324 F.3d 409, 418 (6th Cir. 2003)). However, no general facts about Countryside establish a "substantial enough connection" with Tennessee. *Id.* Countryside is not incorporated in Tennessee, Tennessee is not its principal place of business, it is not registered to do business in Tennessee, it has no stores or other locations in Tennessee, it has no employees or agents in Tennessee, its service areas do not extend to Tennessee, it does not deliver any products to or provide any services in Tennessee, and it does no advertising or marketing targeted towards Tennessee. Tissot Aff. at ¶¶ 3, 4, 6, 7, 9, 10, 12–16, 18.

There are also no facts specific to Ms. Brockington's TCPA claim that establish a "substantial enough connection" with Tennessee. *Intera Corp.*, 428 F.3d at 618. Countryside only texted the telephone number at issue in this case because it was contacted by someone named Brittney in 2022 to inquire about becoming a customer. Tissot Aff. at ¶ 30. That person selected the Athens, Ohio, store as her local store. *Id.* at ¶ 31. She gave no indication of any connection to Tennessee. *Id.* at ¶ 32. She consented to allowing Countryside to contact her. *Id.* at ¶ 34. Countryside therefore had no reason to believe or suspect that the number was listed on a do-not-call registry. *Id.* at ¶ 33. And when Countryside texted the number it did not know that it

19

was reaching out to someone with a connection to Tennessee. *Id.* at ¶ 35. Instead, Countryside believed it was contacting a potential customer in Ohio who previously consented to that contact. *Id.* at ¶ 36. And given the nature of its brick-and-mortar business, Countryside does not generally intend to send unsolicited telephone messages. *Id.* at ¶ 27. It only intends to contact former or potential customers that contact Countryside first and consent to such contact. *Id.* at ¶¶ 28, 29. And Countryside had no intent to disturb or intrude on the privacy of the owner of the telephone number in question. *Id.* at ¶ 40. Given these facts and the resulting lack of a "substantial enough connection" with Tennessee, exercising specific personal jurisdiction against Countryside in this case would not be reasonable under the constitutional requirements of due process. *Intera Corp.*, 428 F.3d at 618.

Because Ms. Brockington cannot establish all three prongs of the applicable test for specific jurisdiction, her Complaint should be dismissed for lack of personal jurisdiction. Countryside's Motion to Dismiss should be granted pursuant to Fed. R. Civ. P. 12(b)(2).

## IV.    CONCLUSION

For the foregoing reasons—because Plaintiff Sheri Butler Brockington cannot meet her burden of establishing either general or specific personal jurisdiction over Defendant Countryside—Countryside respectfully requests that its Motion to Dismiss be granted and that Plaintiff's Complaint be dismissed pursuant to Fed. R. Civ. P 12(b)(2).

20

Respectfully submitted,

/s/ Adam F. Rust
Rodney A. Fields, Esq. (BPR #14846)
e-mail: RFields@LewisThomason.com
Adam F. Rust, Esq. (BPR #27507)
e-mail: ARust@LewisThomason.com
LEWIS THOMASON, P.C.
900 S. Gay St., Ste. 300
P.O. Box 2425
Knoxville, TN 37901
(865) 546-4646
*Attorneys for Defendant Countryside Rentals, Inc.*


/s/ Robert R. Sparks –
w. permission by Adam F. Rust
Robert R. Sparks, Esq.
(Motion for Pro Hac Admission Pending)
e-mail: rrsparks@strausstroy.com
STRAUSS TROY
150 E. 4th Street, 4th Floor
Cincinnati, OH 45202
(513) 621-2120

*Attorneys for Defendant Countryside Rentals, Inc.*


## CERTIFICATE OF SERVICE

I hereby certify that on this 13th Day of July 2026, and pursuant to Fed. R. Civ. P. 5(b)(2)(E), a copy of the foregoing has been delivered to all parties at interest in this cause by operation of the Court's electronic filing system.

/s/ Adam F. Rust
Adam F. Rust, Esq. (BPR #27507)

21