| | | |
|---|---|---|
| SHERI BUTLER BROCKINGTON, | ) | |
| on behalf of herself and others similarly situated, | ) | Case No. 3:26-cv-00249-KAC-DCP |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | District Judge Katherine A. Crytzer |
| | ) | |
| COUNTRYSIDE RENTALS, INC., | ) | Magistrate Judge Debra C. Poplin |
| | ) | |
| Defendant. | ) | |

## DEFENDANT COUNTRYSIDE RENTALS, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

## I.     INTRODUCTION

Defendant Countryside Rentals, Inc.'s ("Countryside") Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 13) and Memorandum in Support (Doc. 14) (collectively "Motion") move pursuant to Rule 12(b)(2), by limited and special appearance only, for the dismissal of the Complaint of Plaintiff Sheri Butler Brockington for lack of personal jurisdiction. Countryside's Motion establishes that Ms. Brockington cannot meet her burden of proving that personal jurisdiction exists against Countryside for her class-action claim under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). *See Mull v. Alliance Mortg. Banking Corp.*, 219 F. Supp. 2d 895, 907 (W.D. Tenn. 2002) (stating that the named plaintiff in a class action must establish personal jurisdiction over the defendant).

As Countryside establishes in its affidavit of Michael D. Tissot, the Owner and President of Countryside (Doc. 14-1), several key facts dictate the result in this case. When it sent the text messages at issue, Countryside did not know it was contacting someone with a connection to

Tennessee. Doc. 14-1 at ¶¶ 30–37. Nor would Countryside intentionally contact anyone within Tennessee because of its 30-minute-drive service limits, which do not come anywhere near Tennessee. *Id.*at ¶¶ 9–12, 25. Countryside does not provide services or products in Tennessee, and it does not solicit business in Tennessee. *Id.* at ¶¶ 16, 18. Instead, Countryside was trying to contact a potential customer named "Brittney" who reached out to Countryside in 2022, consented for Countryside to contact her in response, and represented that her local Countryside store was in Athens, Ohio. *Id.* at ¶¶ 30–34.

As a result of these particular facts, which Countryside believes are unique to this case, specific jurisdiction over Countryside is lacking under four overall lines of analysis. First, Ms. Brockington's location in Tennessee is "the unilateral activity of another party" insufficient to establish purposeful availment because Countryside reasonably believed it was contacting a person in Ohio, not someone in Tennessee. *Alix Partners, LLP v. Brewington*, 836 F.3d 543, 550 (6th Cir. 2016); Doc. 14-1 at ¶¶ 30–37. Second, "the defendant *himself* " did not create a "substantial connection with the forum State" because Countryside only intended to contact a potential customer in Ohio, not Ms. Brockington or anyone else in Tennessee. *Alix Partners*, 836 F.3d at 550; Doc. 14-1 at ¶¶ 30–38; *see also Walden v. Fiore*, 571 U.S. 277, 284–5 (2013). Third, Countryside did not "reasonably anticipate being haled into court" in Tennessee because it did not intend to contact anyone in Tennessee, it does not provide services or products in Tennessee, and it does not solicit business in Tennessee. *Alix Partners*, 836 F.3d at 550; Doc. 14-1 at ¶¶ 16, 18, 30–35. Finally, Countryside cannot have known that it was contacting someone in Tennessee based solely on the area code of Ms. Brockington's mobile cell phone. *Mucha v. Wagner*, 378 N.C. 167, 168, 174, 175–76 (2021). Purposeful availment is not satisfied based on this caselaw and on the present facts.

The arguments in Ms. Brockington's Opposition to Defendant's Motion to Dismiss ("Response") (Doc. 15) do not change this result. Overall, Ms. Brockington argues that "[i]n TCPA cases, courts generally find that specific personal jurisdiction exists when a defendant sends a message into the forum state by targeting a phone number in that forum." Doc. 15 at 7. This may be the result generally where a defendant purposefully contacts someone in a forum state and solicits business there. But that is not the result here where Countryside did not know it was contacting someone in Tennessee and does not solicit business in Tennessee. Doc. 14-1 at ¶¶ 16, 18, 30–37. All of the numerous TCPA cases that Ms. Brockington relies on are distinguishable on these facts. And several of her cited cases agree that personal jurisdiction is lacking on the present facts. *See Luna v. Shac, LLC*, No. C14-00607 HRL, 2014 U.S. Dist. LEXIS 96847, *11 (N.D. Cal. July 14, 2014) (stating that "a cell phone is mobile and therefore its area code does not necessarily indicate the user's residence"); *Hicks v. Health Ins. Innovations, Inc.*, No. 17-3344 (SDW) (LDW), 2017 U.S. Dist. LEXIS 214098, at *5 (D.N.J. Dec. 20, 2017) (finding that the defendant's call to a cell number with a forum state area code was insufficient in itself to confer personal jurisdiction); *Michaels v. Micamp Merch. Servs.*, No. 13-191E, 2013 U.S. Dist. LEXIS 159782, at *12 (W.D. Pa. Nov. 8, 2013) (finding a lack of personal jurisdiction because the defendant did not intend to call into the forum state and did not know that the plaintiff was located there).

The facts of this case do not establish personal jurisdiction against Countryside under the constitutional requirements of due process, and Ms. Brockington cannot meet her burden of proving otherwise. *See Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (stating that the plaintiff bears the burden of establishing personal jurisdiction). Ms. Brockington's claim against Countryside should be dismissed as a result.

## II.     ARGUMENT

"The plaintiff bears the burden of making a prima facie showing of the court's personal jurisdiction over the defendant." *Intera Corp.*, 428 F.3d at 615. This showing must be made by "a preponderance of the evidence." *Reeves v. 1st Class Real Estate, LLC*, No. 1:22-cv-01097-STA-JAY, 2022 U.S. Dist. LEXIS 152060, at *3–4 (W.D. Tenn. Aug. 24, 2022) (*citing Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012)). Based on the applicable caselaw and the particular facts present here, none of which are disputed, Ms. Brockington has failed to establish specific personal jurisdiction against Countryside.[1]

> **A.     Specific jurisdiction over Countryside is lacking because there is no purposeful availment under the particular facts of the present case applied to the requirements of constitutional due process.**

Because Tennessee's long-arm statute extends to the personal-jurisdiction limits of the Due Process Clause, the only issue now before the Court is whether the assertion of personal jurisdiction violates constitutional due process. *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003); *see also* Doc. 15 at 4–5 (agreeing with this point). The applicable three-prong test requires, (1) "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state," (2) "the cause of action must arise from the defendant's activities there," and (3) "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Intera Corp.*, 428 F.3d at 615 (*quoting S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). Ms. Brockington bears the burden of satisfying all three prongs. *LAK, Inc. v. Deer*

---

[1] Ms. Brockington "does not contend that this Court possesses general personal jurisdiction over Defendant," Doc. at 15 at 4; Doc. 14 at 8, n.3. There is therefore no dispute that general jurisdiction is lacking in this case, and the Court need only address specific jurisdiction.

*Creek Enters.*, 885 F.2d 1293, 1303 (6th Cir. 1989). Because she cannot establish the purposeful-availment prong, personal jurisdiction is lacking.

> **1. Countryside did not purposefully avail itself of acting within Tennessee based on the particular facts of this case—Countryside did not know it was contacting someone with a connection to Tennessee or intend to do so, Countryside does not provide products or services in Tennessee, and Countryside does not solicit business in Tennessee.**

"[T]he emphasis in the purposeful availment inquiry is whether the defendant has engaged in some overt actions connecting the defendant with the forum state." *Beydoun v. Wataniya Rest. Holding, Q.S.C.*, 768 F.3d 499, 506 (6th Cir. 2014) (*citing Fortis Corporate Ins. v. Viken Ship Mgmt.*, 450 F.3d 214, 218 (6th Cir. 2006)). As stated above, four overall lines of analysis in Countryside's Motion establish that the requirements of purposeful availment are not satisfied in this case. First, Ms. Brockington's location in Tennessee is "the unilateral activity of another party" insufficient for purposeful availment because Countryside reasonably believed it was contacting a person in Ohio, not someone in Tennessee. *Alix Partners, LLP v. Brewington*, 836 F.3d 543, 550 (6th Cir. 2016); Doc. 14-1 at ¶¶ 30–37. Second, "the defendant *himself*" did not create a "substantial connection with the forum State" because Countryside only intended to contact a potential customer in Ohio, not Ms. Brockington or anyone else in Tennessee, and Countryside did not know that Ms. Brockington was allegedly located in Tennessee. *Alix Partners*, 836 F.3d at 550; Doc. 14-1 at ¶¶ 30–38. Third, Countryside did not "reasonably anticipate being haled into court" in Tennessee because it did not intentionally reach out to Tennessee, it does not provide services or products in Tennessee, and it does not solicit business in Tennessee. *Alix Partners*, 836 F.3d at 550; Doc. 14-1 at ¶¶ 16, 18, 30–35. Finally, caselaw makes clear that Countryside cannot have known it was contacting someone in Tennessee based solely on the area code of Ms. Brockington's mobile cell phone. *Mucha v. Wagner*, 378 N.C.

167, 168, 174, 175–76 (2021). Because "the plaintiff cannot be the only link between the defendant and the forum," purposeful availment is not satisfied on the present facts. *Walden v. Fiore*, 571 U.S. 277, 285 (2013).

Ms. Brockington's Response argues that she "was a Tennessee resident, she received and read the text messages while in Tennessee, and the alleged invasion of privacy occurred in Tennessee," so this should be enough to establish personal jurisdiction. Doc. 15 at 2; *accord* Doc. 1 at ¶ 8 (pleading that Countryside "sent calls into this District"). These facts *could* be enough in some cases. *See Intera Corp.*, 428 F.3d at 616 (stating that purposeful availment may exist "when a defendant makes telephone calls and sends facsimiles into the forum state and such communications 'form the bases for the action'"). But all the particular facts of this case must be considered, not just that Countryside called Ms. Brockington's number. Countryside did not know it was contacting someone in Tennessee, and it did not intend to do so because Countryside does not provide products or services in Tennessee or solicit business in Tennessee. Doc. 14-1 at ¶¶ 16, 18, 30–37. Because Countryside did not create a "purposeful" connection with Tennessee, and it did not act "deliberately" to affiliate itself with Tennessee, the requirements of purposeful availment are not satisfied. *Intera Corp.*, 428 F.3d at 616, 617.

a.      **The particular facts of this case must be considered in full.**

As stated in the affidavit attached to Countryside's Motion, Countryside's business is based on retail stores in Ohio and Kentucky that rely on foot traffic and customers that typically reside within 30 minutes of a store. Doc. 14-1 at ¶¶ 6, 9. A potential customer can contact Countryside online, but given its main line of business renting home furnishings, sales must be finalized in person at a store, over the phone, or at the customer's home, and Countryside's service and delivery area limits only extend to a 30-minute drive from a retail store. *Id.* at ¶¶ 8–

7

11. Countryside's potential customer base is therefore geographically limited by its store locations, so it never intends to send unsolicited telephone messages or to target any advertising or marketing towards Tennessee, where it has no stores or other presence. *Id.* at ¶¶ 12–25, 27. Targeting customers in Tennessee would be a complete waste given its business, which is why Countryside does not solicit business there. *Id.* at ¶¶ 8, 9, 18.

For the texts to Ms. Brockington, Countryside was first contacted by someone named "Brittney" in 2022 to inquire about becoming a customer. Doc. 14-1 at ¶ 30. She selected Athens, Ohio, as her local store, and she gave no indication of any connection to Tennessee, or any other state. *Id.* at ¶¶ 31, 32. So when Countryside texted Ms. Brockington's number, it believed that it was contacting Brittney, and Countryside relied on her consent for this contact. *Id.* at ¶¶ 30, 34. Countryside's only intent was to contact someone it believed was located in Ohio, not to contact anyone in Tennessee. *Id.* at ¶¶ 35, 36. And Countryside did not know that it was contacting someone with a connection to Tennessee. *Id.* at ¶ 35.

Countryside also does not send unsolicited messages in general. Doc. 14-1 at ¶¶ 27–29. Countryside does not provide any products or services to Tennessee, so it does not solicit business in Tennessee, and it only intends to contact existing or potential customers that have contacted Countryside first and consented to receive messages. *Id.* at ¶¶ 16, 18, 27–29. Countryside had no intent or reason to contact Ms. Brockington because she is in Tennessee, far outside Countryside's service-area limits. *Id.* at ¶¶ 11, 15, 18, 25, 35.

> **b.** **Purposeful availment is lacking based on the particular facts of this case applied to the applicable caselaw.**

The result of these facts is that there was no "purposeful" availment by Countryside or an attempt by Countryside to "deliberately" affiliate itself with Tennessee. *Intera Corp.*, 428 F.3d at 616, 617. In other words, "passive availment" is insufficient as a matter of law; rather, there must

be "a deliberate undertaking," which is lacking in this case. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 891 (6th Cir. 2002). Four overall lines of analysis confirm this conclusion.

First, the applicable caselaw mandates that purposeful availment cannot be based on "random, fortuitous, or attenuated contacts . . . or of the unilateral activity of another party or a third person." *Alix Partners*, 836 F.3d at 550 (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). That is what occurred here, because the "unilateral activity" of Ms. Brockington allegedly being located in Tennessee is the only connection to Tennessee. *Id.* Countryside reasonably believed it was contacting a person in Ohio who consented to that contact, not someone in Tennessee. Doc. 14-1 at ¶¶ 30–37. Ms. Brockington's affidavit confirms her pleading that she acquired the telephone number in question in December 2023. Doc. 1 at ¶ 14; Doc. 15-1 at ¶ 5. This was *after* a potential Ohio customer had that number in 2022 and contacted Countryside about its services. Doc. 14-1 at ¶¶ 30–32. The fact that Ms. Brockington happened to acquire it later in 2023 while residing in Tennessee is a "random, fortuitous" event based solely on "the unilateral activity of another party or a third person," not based on the purposeful and deliberate behavior of Countryside to reach out to Tennessee, so it is insufficient to establish purposeful availment. *Alix Partners*, 836 F.3d at 550.

Second, binding precedent requires that a defendant's contact with the forum state must "'proximately result from actions by the defendant *himself* that create a substantial connection with the forum State.'" *Alix Partners*, 836 F.3d at 550 (*quoting Neogen Corp.*, 282 F.3d at 889). This is made particularly clear by *Walden v. Fiore*, 571 U.S. 277, 285 (2013), which reaffirmed that the relevant inquiry is "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Contacts "between the plaintiff (or third parties) and the forum State" are not relevant. *Id.* at 284–85; *see also* Doc. 15 at 2 (agreeing that

"[p]ersonal jurisdiction turns on Defendant's own contacts with the forum"). Here, Countryside itself did not create any substantial connection with Tennessee because Countryside only intended to contact a potential customer who consented to that contact and who's local store was in Athens, Ohio. Doc. 14-1 at ¶¶ 30, 31, 34, 38. Countryside did not know it was texting someone with a connection to Tennessee. *Id.* at ¶ 35. Nor would Countryside intentionally do so because of its 30-minute-drive service-area limits. *Id.*at ¶¶ 9–12. And Ms. Brockington's contacts with Tennessee are not relevant. *Walden*, 571 U.S. at 284–85. Compared to *Walden*, the facts here are even less supportive of purposeful availment because the defendant in that case "knew" about the plaintiff's "connections" to the forum state at issue. *Id.* at 289. Countryside had no knowledge of any Tennessee connection. Doc. 14-1 at ¶ 35. The "random" and "fortuitous" fact that Ms. Brockington allegedly resided in Tennessee was not an action of "the defendant *himself*," so it is not enough to establish that Countryside "purposefully" and "deliberately" reached out to Tennessee. *Walden*, 571 U.S. at 285, 286.

Third, applicable caselaw establishes that Countryside must have deliberately engaged in activities in Tennessee such that it would "reasonably anticipate being haled into court" in Tennessee. *Alix Partners*, 836 F.3d at 550. This typically occurs when a corporate defendant "sought to further their business in Tennessee" or to "conduct business in Tennessee." *Riley v. Phx. Cmty. Cap.*, No. 3:25-cv-00036, 2026 U.S Dist. LEXIS 60726, at *19 (M.D. Tenn. Mar. 23, 2026) (*quoting Neogen Corp.*, 282 F.3d at 891); *see also Eisenbrand v. Starion Energy, Inc.*, No. 17-80195-CV-MARRA, 2018 U.S. Dist. LEXIS 79572, at *16, 17, 18 (S.D. Fla. May 11, 2018) (finding no purposeful availment in a TCPA case because "Defendant provides no goods or services in [the forum state] . . . and has no reason to solicit customers in [the state]," so the defendant "did not aim its marketing efforts in question at this state" or "have reason to know

10

that the harm resulting from its phone call would be suffered in [the state]"). Countryside cannot have anticipated being haled into court in Tennessee because it did not intend to contact someone in Tennessee, and it instead believed it was contacting a potential customer in Ohio who consented to such contact. Doc. 14-1 at ¶¶ 30–35. This is especially true because Countryside does not provide services or products in Tennessee and does not solicit business in Tennessee. *Id.* at ¶¶ 16, 18. Countryside was not even aware that Ms. Brockington resided in Tennessee when it contacted her. *Id.* at ¶¶ 30–35. The contact with Tennessee in this situation was "merely by virtue of [the plaintiff] choosing to reside in Tennessee," which is insufficient. *Riley*, 2026 U.S Dist. LEXIS 60726, at *19; *see also Eisenbrand*, 2018 U.S. Dist. LEXIS 79572, at *24, 26 (finding that because the defendant did not conduct or solicit business in the forum state, "Defendant's 'contacts' with [the forum state] are better characterized as 'random, fortuitous, or attenuated contacts,' not contacts establishing purposeful availment") (*quoting Walden*, 571 U.S. at 286). The result based on the particular facts of this case are that Countryside did not "reasonably anticipate being haled into court" in Tennessee. *Alix Partners*, 836 F.3d at 550.

Fourth, factually applicable caselaw reveals that because of the decline of landlines and rise of mobile phones, a phone number alone does not provide a reliable indication of a person's location. *Mucha v. Wagner*, 378 N.C. 167, 168 (2021). The court in *Mucha* held that while the defendant purposefully called the plaintiff, "he had no way of knowing that in doing so he was establishing any connection with the State," "a person's phone number alone no longer provides a reliable indication of that person's location," and calling a cell phone "does not automatically vest jurisdiction" in the state where the recipient "happens to be located at the time." *Id.* at 168, 174, 175–76. Analogizing *Mucha* to the present facts, Countryside cannot have known that it was contacting someone in Tennessee based solely on the area code of Ms. Brockington's

11

mobile cell phone. *See id.*; *see also Luna v. Shac, LLC*, No. C14-00607 HRL, 2014 U.S. Dist. LEXIS 96847, *8 n.2 (N.D. Cal. July 14, 2014) (stating that "a cell phone is mobile and therefore its area code does not necessarily indicate the user's residence"). In fact, Countryside did not know that it was reaching out to someone in Tennessee when it texted that number. Doc. 14-1 at ¶ 35. Because "the plaintiff cannot be the only link between the defendant and the forum," purposeful availment is not satisfied on the present facts. *Walden*, 571 U.S. at 285.[2]

The bottom line is that purposeful availment is not satisfied here because Countryside did not <u>purposefully</u> avail itself of acting within Tennessee or create a <u>substantial</u> connection with Tennessee. Instead, the only connection to Tennessee was created <u>unilaterally</u> by Ms. Brockington with <u>no knowledge or intent</u> from Countryside. Because Ms. Brockington cannot meet the burden of establishing purposeful availment under these facts, the analysis ends here, and dismissal should be granted on this basis alone. *See Noval Int'l Res., LLC v. Andec, Inc*, 875 F. Supp. 2d 804, 814 (W.D. Tenn. 2012) (holding that because purposeful availment was not established, the court need not decide the other two elements). None of Ms. Brockington's arguments in response change this result.

     **c.**      **Ms. Brockington's caselaw and arguments are distinguishable and invalid because of the particular facts of the present case.**

As an initial point, the opening sentence of Ms. Brockington's Response claims that the "Motion asks the Court to resolve disputed jurisdictional facts." Doc. 15 at 1. This is incorrect

---

[2] Ms. Brockington's attempt to distinguish *Mucha* based on "North Carolina's own due process framework" and "Tennessee's long-arm statute" is invalid. Doc. 15 at 10 *Mucha*'s due process analysis is based on the exact same requirements of the Fourteenth Amendment and federal caselaw that apply here. 378 N.C. at 170. And the Tennessee long-arm statute does not apply in this case because, as stated above, the only issue is constitutional due process, which Ms. Brockington's Response expressly agrees with. *Bridgeport Music*, 327 F.3d at 477; Doc. 15 at 4–5 (quoting *Bridgeport Music* for this exact same rule).

because the Motion does not ask for any such disputes to be resolved. *See* Doc. 14. And Countryside never "assert[ed] that Plaintiff had any prior relationship with Defendant," as the Response incorrectly claims. Doc. 15 at 3; *see* Docs. 14 & 14-1 (making no such assertion). Instead, Countryside agrees with the applicable rule that without an evidentiary hearing (which even Plaintiff does not contend is necessary for the Court to decide the Motion), disputed facts should be resolved in Ms. Brockington's favor. *PT Pukuafu Indah v. U.S. Sec. & Exch. Comm'n*, 661 F.3d 914, 920 (6th Cir. 2011); *Noval Int'l Res.*, 875 F. Supp. 2d at 807; Doc. 15 at 15 (stating that all factual disputes must be resolved in Plaintiff's favor). But this rule does not apply here because "Plaintiff has not identified a dispute." *Arnold v. Grand Celebration Cruises, LLC*, No. CIV 17-685 JAP/KK, 2017 U.S. Dist. LEXIS 130302, at \*12 (D.N.M. Aug. 16, 2017). The Response does not identify any disputed facts. *See* Doc. 15. There are no disputed facts created but either of the two affidavits. *Compare* Doc. 14-1, *with* Doc. 15-1. Countryside has no basis on which to dispute any of the facts in Ms. Brockington's affidavit. *See* Doc. 15-1. And if Ms. Brockington thought there were disputes, Countryside proposed a "90-day period of jurisdictional discovery" to resolve them, but Ms. Brockington did not agree to such discovery. Doc. 16 at 2, 3. There are no disputed jurisdictional facts for this Court to resolve, so there is no basis on which to disregard any of the facts in the Motion's affidavit. All the facts going to personal jurisdiction in this case are undisputed.[3]

---

[3] As another initial point, the Response is imprecise in claiming that "Defendant's Motion also asks . . . that this action be reassigned . . . ." Doc. 15 at 3. Countryside merely "question[ed] whether Plaintiff filed this case in the correct Division of this Court under E.D. Tenn. L.R. 3.1.2," and then left it to this Court's "'sole discretion'" to resolve the matter. Doc. 14 at 7, n. 2 (quoting E.D. Tenn. L.R. 3.1.2(c)). As the cited Local Rule states, neither party has "a right to any specific venue." E.D. Tenn. L.R. 3.1.2(c). Countryside therefore did not ask for a ruling one way or another. And Countryside agrees with Ms. Brockington that a case being filed in the
Continued on next page

13

Going to purposeful availment, Ms. Brockington cites at least thirteen TCPA cases to support her argument that "[i]n TCPA cases, courts generally find that specific personal jurisdiction exists when a defendant sends a message into the forum state by targeting a phone number in that forum." Doc. 15 at 7. This may be the result <u>generally</u> where a defendant purposefully contacts someone in a forum state and solicits business in that state. But it is not the correct result here because Countryside did not know it was contacting someone with a connection to Tennessee, and Countryside does not provide services or products in Tennessee or solicit business in Tennessee. Doc. 14-1 at ¶¶ 16, 18, 30–37. Ms. Brockington's cases are distinguishable based on these particular undisputed facts.

As reviewed above, the key undisputed facts in this case are that when Countryside sent the texts in question, it reasonably believed it was contacting a person in Ohio, not someone in Tennessee. Doc. 14-1 at ¶¶ 30–37. Countryside did not know it was texting someone with a connection to Tennessee. *Id.* at ¶ 35. Nor would it intentionally do so because of its 30-minute-drive service limits, which do not come anywhere near Tennessee. *Id.* at ¶¶ 9–12, 25. Countryside does not provide services or products in Tennessee, and it does not solicit business in Tennessee. *Id.* at ¶¶ 16, 18. The only connection with Tennessee was that Ms. Brockington obtained the phone number at issue in 2023, after Countryside's potential customer in Ohio had that number in 2022. Doc. 1 at ¶ 14; Doc. 15-1 at ¶ 5; Doc. 14-1 at ¶¶ 30–32. And it cannot be inferred that Countryside knew it was contacting someone in Tennessee based solely on the area code of Ms. Brockington's cell number. *Mucha*, 378 N.C. at 168. The combination of all of these key facts establish that Ms. Brockington's Response is incorrect in claiming that Countryside's Motion

---

correct Division "provides no basis for dismissal of this action." Doc. 15 at 3. Whether or not this Court exercises its sole discretion to transfer this case to another District has no bearing on the present Motion.

seeks dismissal "merely because it allegedly believed the number belonged to someone else." Doc. 15 at 9. As analyzed above, more facts than that determine the result in this situation.

The TCPA cases that Ms. Brockington relies on do not involve the particular facts of the present situation, which Countryside believes are unique. *See Abramson v. Agentra, LLC*, No. 18-615, 2018 U.S. Dist. LEXIS 212285, at *12 (W.D. Pa. Dec. 18, 2018) (discussing no facts going to the defendant's intent or the other key facts present in this case case); *Abramson v. CWS Apt. Homes, LLC*, No. 16-426, 2016 U.S. Dist. LEXIS 146627, at *10 (W.D. Pa. Oct. 24, 2016) (same); *Baker v. Caribbean Cruise Line, Inc.*, No. CV 13-8246-PCT-PGR, 2014 U.S. Dist. LEXIS 28960, at *6 (D. Ariz. Mar. 6, 2014) (same); *Naiman v. TranzVia LLC*, No. 17-cv-4813-PJH, 2017 U.S. Dist. LEXIS 199131, at *38–39 (N.D. Cal. Dec. 4, 2017) (finding a lack of personal jurisdiction based on agency principles, and not discussing any facts going to the defendant's intent or the other key facts present in this case case); *Heidorn v. BDD Mktg. & Mfg. Co., LLC*, No. C-13-00229 JCS, 2013 U.S. Dist. LEXIS 177166, at *25–26 (N.D. Cal. Aug. 19, 2013) (discussing no facts going to the defendant's intent or the other key facts present in this case case); *Keim v. ADF MidAtlantic, LLC*, 199 F. Supp.3d 1362, 1370 (S.D. Fla. 2016) (finding that the defendant purposefully directed a marketing campaign to the forum state); *Ott v. Mortg. Investors Corp. of Ohio*, No. 3:14-cv-00645-ST, 2015 U.S. Dist. LEXIS 48770, at *10 (D. Or. Apr. 14, 2015) (same); *Payton v. Kale Realty, LLC*, No. 13 C 8002, 2014 U.S. Dist. LEXIS 118590, at *10 (N.D. Ill. Aug. 26, 2014) (same); *Shelton v. Nat'l Gas & Elec., LLC*, No. 17-4063, 2019 U.S. Dist. LEXIS 59235, at *22–23 (E.D. Pa. Apr. 5, 2019) (discussing no facts going to the defendant's intent or the other key facts present in this case case); *Vandenberg & Sons Furniture, Inc. v. Katchen*, No. 1:12-CV-1021, 2013 U.S. Dist. LEXIS 18459, at *10–11 (W.D. Mich. Feb. 12, 2013) (same). Compared to all these cases, Countryside did not intend to

15

contact anyone in Tennessee, it did not direct a marketing campaign into Tennessee, and Ms. Brockington does not dispute these facts. Doc. 14-1 at ¶¶ 18, 35–37; *see* Docs. 15 & 15-1. Rather, Countryside only attempted to contact someone in Ohio who consented to that contact, and it does not solicit business in Tennessee in general. Doc. 14-1 at ¶¶ 18, 30–35.

The closest case that Ms. Brockington cites is *Luna v. Shac, LLC*, No. C14-00607 HRL, 2014 U.S. Dist. LEXIS 96847, *11 (N.D. Cal. July 14, 2014), because it discusses the defendant's intent and knowledge, but it otherwise does not encompass the particular facts of the present case. *Luna* is distinguishable because the court found that the defendant knew the alleged harm caused by the text messages it sent to forum state cell phones was likely to be suffered in the forum state. 2014 U.S. Dist. LEXIS 96847, at *11. Countryside had no such knowledge here. To the contrary, Countryside believed that the only effect would be felt in Ohio, not in Tennessee, because Countryside did not know that the new owner of the number at issue was in Tennessee, and it does not otherwise solicit business in Tennessee. Doc. 14-1 at ¶¶ 18, 30–35; *see also Luna*, 2014 U.S. Dist. LEXIS 96847, at *8 n.2 (acknowledging that "a  cell phone is mobile and therefore its area code does not necessarily indicate the user's residence"). The result is that Countryside did not <u>purposefully</u> avail itself of acting within Tennessee.

Ms. Brockington's reliance on *Hicks v. Health Ins. Innovations, Inc.*, No. 17-3344 (SDW) (LDW), 2017 U.S. Dist. LEXIS 214098, at *5 (D.N.J. Dec. 20, 2017), confirms this result because it found that the defendant's call to a cell phone number with a forum state area code was insufficient in itself to confer personal jurisdiction. The same is true for Ms. Brockinton's reliance on *Michaels v. Micamp Merch. Servs.*, No. 13-191E, 2013 U.S. Dist. LEXIS 159782, at *12 (W.D. Pa. Nov. 8, 2013), which found a lack of personal jurisdiction because the defendant did not intend to call into the forum state, and the defendant did not know

16

that the plaintiff was located in that state. The same facts here lead to the same result: Countryside did not <u>purposefully</u> avail itself of acting within Tennessee.

Also consider cases reaching the opposite conclusion as Ms. Brockington's cited cases. A plaintiff cannot always know that a call to a cell number having an area code associated with a forum state is likely to reach a resident of that forum state. *Cantu v. Platinum Mktg. Grp., LLC*, No. 1:14-CV-71, 2015 U.S. Dist. LEXIS 90824, at *8–9 (S.D. Tex. July 13, 2015). "Federal district courts have divided over the precise question . . . [of] whether contacting a cell phone number in an area code associated with a state, without more, proves purposeful availment when the call gives rise to an alleged TCPA claim." *Id.* at *9 (*citing Sojka v. Loyalty Media LLC*, No. 14-CV-770, 2015 U.S. Dist. LEXIS 66045, at *8 (N.D. Ill. May 20, 2005) (holding that text messages directed at cell phone numbers in an Illinois area code did not demonstrate purposeful availment); *see also Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) ("'The 'mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction.'"). "The cases that have found express aiming have all relied on evidence beyond the plaintiff's mere residence in the forum state." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d at 440, 447 (7th Cir. 2010). The Court should consider <u>all the facts</u> of this particular situation, not just that Countryside texted Ms. Brockington's number. *See Cantu*, 2015 U.S. Dist. LEXIS 90824, at *11 (stating that "courts dismissing TCPA claims for lack of personal jurisdiction have implicitly or explicitly 'recognize[d] that a cell phone prefix, unlike a landline, is not dispositive of the residence, domicile or location of the cell phone owner'") (*quoting Sojka*, 2015 U.S. Dist. LEXIS 66045, at *9–10). Just as in *Cantu*, because Countryside did not know that the phone number at issue was owned by a Tennessee resident, purposeful

17

availment is lacking in this case, especially when combined with the fact that Countryside does not solicit business in Tennessee. Doc. 14-1 at ¶¶ 16, 18, 35.

Long-established Supreme Court precedent confirms this result because specific jurisdiction applies only when "a company 'exercises the privilege of conducting activities within a state.'" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 360 (2021) (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Without that connection, the company is not evoking "the benefits and protection of the laws of that state." *Int'l Shoe*, 326 U.S. at 319. And it lacks the required "'fair warning'—knowledge that 'a particular activity may subject [it] to the jurisdiction of a foreign sovereign.'" *Ford Motor Co.*, 592 U.S. at 360 (*quoting Burger King Corp.*, 471 U.S. at 472). As in *Walden*, there is no connection between Countryside and Tennessee other than the defendant's presence in the forum state. 571 U.S. at 285 (stating that "the plaintiff cannot be the only link between the defendant and the forum"); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980) (finding no personal jurisdiction because the defendant "solicit[ed] no business" in the forum state, and "the fortuitous circumstance" of an accident in the state was insufficient to exercise personal jurisdiction).

The result here is that purposeful availment is not satisfied because Countryside did not <u>purposefully</u> avail itself of acting within Tennessee or create a <u>substantial</u> connection with Tennessee. The Court's analysis should end here. *See Noval Int'l Research*, 875 F. Supp. 2d at 814 (stating that the court need not address the remaining prongs of the test because the plaintiff did not establish purposeful availment). Countryside's Motion should be granted accordingly.[4]

---

[4] Ms. Brockington's Declaration sufficiently establishes that she was a Tennessee resident when she received the text messages in question, so the second prong of the applicable test is no longer disputed. Doc. 15-1 at ¶ 11; *see also Intera Corp.*, 428 F.3d at 617 (stating that the "arising from" prong "is satisfied 'when the operative facts of the controversy arise from the defendant's

Continued on next page

18

## III. CONCLUSION

For the foregoing reasons and those established in Countryside's Motion—because Plaintiff Sheri Butler Brockington cannot meet her burden of establishing personal jurisdiction—Countryside respectfully requests that its Motion to Dismiss be granted and that Plaintiff's Complaint be dismissed pursuant to Fed. R. Civ. P 12(b)(2).

Respectfully submitted,

/s/ Adam F. Rust
Rodney A. Fields, Esq. (BPR #14846)
e-mail: RFields@LewisThomason.com
Adam F. Rust, Esq. (BPR #27507)
e-mail: ARust@LewisThomason.com
LEWIS THOMASON, P.C.
900 S. Gay St., Ste. 300
P.O. Box 2425
Knoxville, TN 37901
(865) 546-4646
*Attorneys for Defendant Countryside Rentals, Inc.*

---

contacts with the state'"). For the third prong of the test, as the Response acknowledges, it only needs to be addressed "once the first two are met." Doc. 15 at 13. Ms. Brockington has failed to establish purposeful availment, so the third prong does not need to be addressed further. Regardless, Ms. Brockington is incorrect in arguing under the third prong that Countryside "intentionally sen[t] telemarketing text messages into another state." Doc. 15 at 13. As addressed above and in the Motion, when Countryside sent the texts in question it did not intend to text someone in Tennessee. Doc. 14-1 at ¶ 35. Countryside would not have done so intentionally because of its 30-minute-drive service limits, which do fall within Tennessee. *Id.* at ¶¶ 9–12, 25. And Countryside does not provide services or products in Tennessee or solicit any business at all in Tennessee. *Id.* at ¶¶ 16, 18. Just as with purposeful availment, the particular facts of this case establish that Countryside does not have a "substantial enough connection" with Tennessee based on the facts. *Intera Corp.*, 428 F.3d at 618. Exercising specific personal jurisdiction against Countryside would therefore not be reasonable under the third prong of the test. *See* Doc. 14 at 19–20 (addressing this issue further).

19

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th Day of July 2026, and pursuant to Fed. R. Civ. P. 5(b)(2)(E), a copy of the foregoing has been delivered to all parties at interest in this cause by operation of the Court's electronic filing system.

/s/ Adam F. Rust
Adam F. Rust, Esq. (BPR #27507)
